## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED NATIONAL INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY, and
MUNICH REINSURANCE AMERICA, INC., f/k/a
AMERICAN RE-INSURANCE COMPANY,          Case No.:
successor-in-interest to EXECUTIVE RISK
INDEMNITY INC., f/k/a AMERICAN EXCESS          Hon.
INSURANCE COMPANY,

        Plaintiffs,

v

NCR CORPORATION, ALLIANZ
UNDERWRITERS INSURANCE COMPANY,
CENTURY INDEMNITY COMPANY, as successor
to CCI INSURANCE COMPANY, as successor to
INSURANCE COMPANY OF NORTH AMERICA,
NATIONAL SURETY CORPORATION, ST.
PAUL MERCURY INSURANCE COMPANY,
SAFETY NATIONAL CASUALTY
CORPORATION, 21ST CENTURY CENTENNIAL
INSURANCE COMPANY, f/k/a COLONIAL
PENN INSURANCE COMPANY,

        Defendants.

| | |
|---|---|
| Anita G. Fox | Maryann C. Hayes |
| Fraser Trebilcock Davis & Dunlap, P.C. | Bates Carey LLP |
| 124 W. Allegan, Suite 1000 | 191 North Wacker, Suite 2400 |
| Lansing, Michigan 48933 | Chicago, Illinois 60606 |
| Telephone: (517) 482-5800 | Telephone: (312) 762-3145 |
| Fax: (517) 482-0887 | Fax: (312) 762-3200 |
| Attorneys for Plaintiff United National | Attorneys for Plaintiff Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company, successor-in-interest to Executive Risk Indemnity Inc., f/k/a American Excess Insurance Company |
| David Westrup | |
| von Briesen & Roper, s.c. | |
| 411 East Wisconsin Avenue, Suite 1000 | |
| Milwaukee, WI 53202 | |
| Telephone: 414-287-1528 | |
| Fax: 414-238-6678 | |
| Attorneys for Plaintiff Federal Insurance Company | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, United National Insurance Company ("United National"), Federal Insurance Company ("Federal") and Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company, successor-in-interest to Executive Risk Indemnity Inc., f/k/a American Excess Insurance Company ("MRAm"), by and through their attorneys, for their Complaint against Defendant NCR Corporation ("NCR"), allege as follows:

## INTRODUCTION

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 and §2202, seeking a determination as to the respective rights and obligations of the parties under excess liability insurance policies issued to NCR with respect to claims against NCR arising out of the contamination of the Allied Paper Inc./Portage Creek/Kalamazoo River Superfund Site ("Kalamazoo River Superfund Site") in Kalamazoo County, Michigan.

2.      In November 2010, the United States Environmental Protection Agency ("EPA") issued a "General Notice of Potential Liability" to NCR with respect to the Kalamazoo River Superfund Site in which EPA stated that "NCR may be liable under Section 107 of CERCLA . . . as an arranger, who by contract or agreement, arranged for the disposal, treatment and/or transportation of hazardous substances at the Site."

3.      In addition, claims have been asserted against NCR with respect to the Kalamazoo River Superfund Site in a suit filed in this Court captioned *Georgia-Pacific Consumer Products LP, et al. v. NCR Corp., et al.*, No. 1:11-cv-00483 (the "Georgia-Pacific Suit"), which seeks contribution under Section 113(f)(1) and/or Section 107(a)(4)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

## THE PARTIES

4.     United National Insurance Company is an insurance company organized under the laws of Pennsylvania, with its principal place of business in Pennsylvania.

5.     Federal Insurance Company is an insurance company organized under the laws of Indiana, with its principal place of business in New Jersey.

6.     MRAm is an insurance company organized under the laws of the State of Delaware, with its principal place of business in New Jersey.

7.     Upon information and belief, NCR is a Maryland corporation with its principal place of business located in Duluth, Georgia.

8.     Allianz Underwriters Insurance Company is an insurance company organized under the laws of California with its principal place of business in Illinois.

9.     Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, is an insurance company organized under the laws of Pennsylvania, with its principal place of business in Pennsylvania.

10.     National Surety Corporation is an insurance company organized under the laws of Illinois, with its principal place of business in California.

11.     St. Paul Mercury Insurance Company is an insurance company organized under the laws of Minnesota, with its principal place of business in Minnesota.

12.     Safety National Casualty Corporation is an insurance company organized under the laws of Missouri, with its principal place of business in Missouri.

13.     21st Century Centennial Insurance Company, f/k/a Colonial Penn Insurance Company, is an insurance company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Delaware.

14.     The parties listed in paragraphs 4-6 and 8-13 will collectively be referred to as the "Insurers."

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship.  In a diversity case, the court is to align the parties according to their interests in the litigation in accordance with the primary dispute that is in controversy. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.,* 621 F.3d 554, 559 (6th Cir. 2010).  In an insurance coverage declaratory judgment action, the parties should generally be aligned with the insurers on one side, and the insured on the other. *Markel Ins. Co. of Canada v. Progressive Mich. Ins. Co*., 2010 WL 5353105, at *2 (W.D. Mich.  2010); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.,* 44 F.Supp.2d 870, 875 (E.D.Mich.1999); *see also United States Fid. and Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1090 (6th Cir.1992).  The Excess Insurers, on one hand, and NCR on the other hand, are citizens of different states.

16.     This case is one of actual, justiciable controversy between the Insurers and NCR. The Insurers have an interest which will be affected by this declaration of rights and obligations.

17.     The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391:

      (a)     The Kalamazoo River Superfund Site is located in the Western District of Michigan.

      (b)     The Georgia-Pacific Suit is pending in the Western District of Michigan.

      (c)     The Georgia-Pacific Suit was transferred to this District from the

Eastern District of Wisconsin on a motion filed by NCR to transfer the action pursuant to 28 U.S.C. § 1404(a).

(d)     In ruling in favor of the transfer, the Eastern District of Wisconsin ruled that "the interests of justice strongly favor a venue in the Western District of Michigan." *Georgia-Pacific Consumer Products LP, et al. v. NCR Corp., et al.*, No. 10-C-1087, slip op. at 7 (E.D. Wisc. May 10, 2011).

(e)     A prior declaratory judgment action relating to the Kalamazoo River Superfund Site was filed in this District by one of NCR's primary insurers, Liberty Mutual, *Liberty Mutual Ins. Co. v. NCR Corporation,* No. 13-cv-00332-JTN.  That action has been resolved.

19.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) in that this is a judicial district in which NCR is subject to personal jurisdiction.

## FACTUAL BACKGROUND

20.     By letter dated April 8, 2003, EPA sent to NCR a "Request for Information Pursuant to Section 104(e) for the Allied Paper/Portage Creek/Kalamazoo River Superfund Site in Kalamazoo and Allegan Counties in Michigan" seeking information regarding NCR's past sales of paper broke to paper recycling mills adjacent to the Kalamazoo River and/or Portage Creek.

21.     EPA asserts that Kalamazoo River Superfund Site is contaminated primarily with polychlorinated biphenyls (PCBs).

22.     Upon information and belief, Georgia-Pacific is a member of the Kalamazoo River Study Group ("KRSG"), an unincorporated association of four paper companies which operated paper recycling mills conducting recycling and deinking operations, adjacent to the Kalamazoo River or Portage Creek.

23.     Upon information and belief, Georgia-Pacific and the other members of the KRSG "each contributed PCBs to the [Kalamazoo River Superfund Site] in large quantities, on a regular basis, and over a long period of time, as a result of their deinking and paper recycling operations." *Kalamazoo River Study Group v. Rockwell Int'l* (*KRSG*), 107 F. Supp. 2d 817, 828 (W.D. Mich. 2000).

24.     On or about November 24, 2010, EPA issued the "General Notice of Potential Liability" to NCR with respect to the Kalamazoo River Superfund Site.

25.     Georgia-Pacific Consumer Products, LP, Fort James Corporation, and Georgia-Pacific LLC (collectively, "Georgia-Pacific"), instituted the Georgia-Pacific Suit by filing a complaint in the Eastern District of Wisconsin on or about December 10, 2010.

26.     On or about January 18, 2011, NCR filed a motion to transfer the Georgia-Pacific Suit to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).

27.     By Decision and Order dated May 10, 2011, the Georgia-Pacific Suit was transferred to the Western District of Michigan.

28.     On or about June 24, 2011, Georgia-Pacific filed its First Amended Complaint ("FAC") in the Georgia-Pacific Suit.

29.     In the Georgia-Pacific Suit, Georgia-Pacific has demanded that NCR pay a "fair portion" of the costs associated with the site, which Georgia-Pacific has alleged exceed $79 million.

30.     Georgia-Pacific alleges that "[b]eginning no later than 1954, and lasting at least through 1971, PCBs were released into the Kalamazoo River (and connected Portage Creek, which flows directly into the Kalamazoo River) in part through the past discharge, release, and disposal of PCB-contaminated solids and paper residuals by paper de-inking and recycling companies." (Doc. No. 80, FAC, ¶ 3)

31.     Georgia–Pacific alleges further that "PCBs were released into the Kalamazoo River because waste paper that was de-inked and/or recycled by companies near the Kalamazoo River included PCB-laden 'broke' and 'trim.' Broke and trim were wastes that resulted from the manufacture of proprietary, PCB-coated 'carbonless copy paper' ("CCP") pioneered by Defendant NCR Corporation." (Doc. No. 80, FAC, ¶ 4)

32.     Georgia-Pacific has asserted that it is entitled to contribution from NCR pursuant to Section 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(1) and/or Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B). (Doc. No. 80, FAC, First and Second Counts.)

33.     On September 26, 2013, after a two-week bench trial in Phase I, which included 25 expert and lay witnesses, the Court issued findings of fact and conclusions of law determining "that NCR is directly liable as an arranger under CERCLA, 42 U.S.C. § 9607 (a)(3)." (Doc. No. 432 at 2).

34.     The Court stated that its conclusion was "based on its finding, as a matter of fact, that NCR understood, no later than 1969, that CCP broke was a waste, not a useful product, because no rational paper recycler, fully apprised of the fact that NCR was, would use CCP broke in its recycling process.  Even after NCR's knew hazardous waste disposal necessarily resulted from the process of recycling CCP broke, NCR continued to manufacture CCP and

encourage recyclers-like those in the Kalamazoo River Valley-to use CCP broke in the recycling operations to avoid other, higher cost means of disposing of the CCP broke." (Doc. No. 432 at p. 3).

35.     Trial in Phase II of the Georgia-Pacific Suit will determine relative shares of liability among the parties, and is set for trial on September 22, 2015.

36.     In its Trial Brief in Phase I of the Georgia-Pacific Suit, NCR stated that "[s]pecific intent to dispose of a hazardous substance is an element of arranger liability." Thus, a company "may not be held liable as an arranger under CERCLA unless the plaintiff proves that the company entered into the relevant transaction with the specific purpose of disposing of a hazardous substance." (NCR Trial Brief at 12)(Doc No. 363)(internal citations omitted).

37.     The Insurers issued excess liability insurance policies to NCR during the period 1979-1986 (the "Excess Policies").

38.     Including by letter dated August 26, 2014, NCR advised that in the event NCR is found liable for any costs in the Georgia-Pacific Suit, whether by settlement or judgment, NCR will expect the Insurers to cover such loss under their respective insurance policies.

39.     The Insurers have disputed that such loss would be covered under the Excess Policies.

40.     Because, *inter alia,* the Excess Policies contain "other insurance" clauses, the Insurers are entitled to a declaration of rights that is binding on NCR and all of its other insurers.

41.     The Insurers and NCR have adverse interests with respect to whether NCR is entitled to insurance coverage for its liability with respect to the Kalamazoo River Superfund Site, including NCR's liability alleged in the Georgia-Pacific Suit. Thus, an actual controversy

exists among the parties concerning their respective rights and obligations under the Excess Policies.

## COUNT I
## DECLARATORY JUDGMENT

42.     Plaintiffs repeat and reincorporate each of the allegations set forth in paragraphs 1 through 41 above, as though fully set forth herein.

43.     Plaintiffs seek a declaration of the rights and obligations of the parties under the Excess Policies identified in Exhibit 1, including as set forth in paragraphs 44 through 53, below.

44.     Under the terms, conditions, and exclusions of the Excess Policies, there is no coverage for NCR's claims with respect to the Kalamazoo River Superfund Site and the Georgia-Pacific Suit.

45.     The Excess Policies do not provide coverage for NCR's claims with respect to the Kalamazoo River Superfund Site and the Georgia-Pacific Suit, including because and/or to the extent:

> a.     Such claims arise, in whole or in part, from bodily injury or property damage arising out of any discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waster materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is both sudden and accidental;

> b.     Such claims, in whole or in part, do not arise from an occurrence as that term is used or defined in the Excess Policies;

      c.     Such claims arise, in whole or in part, from bodily injury or property damage expected or intended from the standpoint of the insured, or, alternatively, the injury or damage was intentionally caused;

      d.     Such claims arise, in whole or in part, from bodily injury or property damage  which occurred outside of the Insurers' policy periods; and

      e.     Such claims do not arise, in whole or in part, from bodily injury or property damage as those terms are used or defined in the Excess Policies.

46.     The Insurers have no obligations under the Excess Policies until and unless NCR demonstrates proper exhaustion of all triggered policies and self-insured retentions.

47.     The Excess Policies do not contain a duty to defend and/or loss as defined in the Excess Policies does not include investigation, defense or appeal costs and expenses nor costs or expenses incident to any of the same.

48.     To the extent NCR failed to comply with any condition precedent to coverage, there would be no coverage under the Excess Policies.

49.     To the extent coverage is sought for any occurrence that was underway when the Excess Policies were issued, there would be no coverage under such Policies.

50.     There may be no coverage for fines, penalties, punitive, exemplary, or treble damages under the terms of the Excess Policies, or on public policy grounds, and/or to the extent of applicable law.

51.     To the extent there is any coverage for the claims under the Excess Policies, the Excess Policies contain "other insurance" clauses that define or limit the Insurers' obligations to NCR.

52.     To the extent NCR's claims are barred, in whole or in part, by the applicable statute of limitations, there would be no coverage under the Excess Policies.

53.     To the extent NCR's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, or laches, there would be no coverage under the Excess Policies.

54.     Insofar as any of the Excess Policies were obtained by false or misleading representations or omissions, there would be no coverage under such policy.

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Declare that Plaintiffs have no obligations to NCR with respect to the Kalamazoo River Superfund Site and the Georgia-Pacific Suit;

2.     In the alternative, declare the respective rights and obligations of the parties under the Excess Policies, and the extent, if any, of the Insurers' obligations to NCR with respect to the Kalamazoo River Superfund Site and the Georgia-Pacific Suit;

3.     Award Plaintiffs their costs and attorneys' fees; and

4.     Grant Plaintiffs such other and further relief as may be necessary and just.

Respectfully submitted,

Fraser Trebilcock Davis & Dunlap, P.C.
Attorneys for  United National


/s/Anita G. Fox
Anita G. Fox
124 W. Allegan, Suite 1000
Lansing, Michigan 48933

Dated: June 16, 2015

Bates Carey LLP
Attorneys for Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company, successor-in-interest to Executive Risk Indemnity Inc., f/k/a American Excess Insurance Company


/s/ Maryann C. Hayes
Maryann C. Hayes
191 North Wacker, Suite 2400
Chicago, Illinois  60606

Dated:  June 16, 2015

von Briesen & Roper, s.c.
Attorneys for Federal Insurance Company

David Westrup
David Westrup
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202

Dated: June 16, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of June, 2015, I electronically filed the foregoing paper with the clerk of the court using the ECF system which will send notification of such filing to counsel of record.

 /s/ Anita G. Fox
Anita G. Fox (P-47818)
124 West Allegan Street, Suite 1000
Lansing, MI 48933
(517) 482-5800